UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| DANIEL GRUBB, RAYMOND LEWIS and MONROE SNODGRASS, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 6: 05-498-DCR |
| V. | ) ) ) | |
| CHARLES MARCUM, CLAY COUNTY JAILER in his individual and official capacity, CLAY COUNTY FISCAL COURT, MIKE PATRICK, WHITLEY COUNTY JUDGE EXECUTIVE, in his individual and official capacity, and WHITLEY COUNTY FISCAL COURT, | ) ) ) ) ) ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Plaintiffs' renewed Motion for Class Certification. [Record No. 2, 13] Because the Plaintiffs have sought to expand the class without permission, failed to show why joinder would be impossible, and are not representative of the expanded class, their motion will be denied. [Record No. 2] To the extent that the response in opposition to class certification filed by Mike Patrick and the Whitley County Fiscal Court also contains a motion to dismiss, it will be denied without prejudice. [Record No. 15]

## I.   BACKGROUND

In late July 2005, the Whitley County Detention Center was ordered closed by the Franklin County Circuit Court and the Commonwealth of Kentucky Department of Corrections ("KDOC") due to numerous safety and security violations. The KDOC then transferred

approximately 130 prisoners to other detention facilities around the Commonwealth.  One of those facilities was the Clay County Detention Center.

After the Whitley County Detention Center was closed, Mike Patrick, Whitley County Judge Executive, contacted Charles Marcum, Clay County Jailer, about housing Whitley County detainees in the Clay County Detention Center.  Marcum agreed, and pursuant to an agreement between the two, individuals arrested in Whitley County were transported to Clay County for detention.  This agreement was in effect until the Whitley County Detention Center was re-opened in November 2005.  Plaintiffs Grubb, Lewis and Snodgrass were arrested in Whitley County during this period and were transported to Clay County.  The Plaintiffs allege that they were arrested without a warrant in Whitley County and subsequently held in Clay County for 17, 13, and 22 days respectively before receiving a probable cause hearing.  Plaintiffs also allege they were too poor to post bond.

On September 12, 2005, the Plaintiffs filed a civil rights complaint in this Court.  Their complaint was later amended on October 12, 2005. [Record No. 1, 3] Simultaneously, they also filed motions for declaratory judgment, preliminary injunction, permanent injunction, and a motion for class certification.  [Record No. 2]  On November 8, 2005, the Court allowed the parties to engage in discovery for 60 days on the issue of class certification.  [Record No. 9]  On January 6, 2006, the Plaintiffs filed their memorandum in support of class certification and defendants responded.  [Record No. 13, 14, 16] No reply brief was filed by the Plaintiffs.

## II.     LEGAL ANALYSIS

### The Standard for Determining Class Certification

Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for maintaining a class action.  Under this rule, a party seeking to certify a class bears the burden of establishing that certification is proper.  *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  A class action may not be approved simply "by virtue of its designation as such in the pleadings."  *Id.* at 1079.  Likewise, prospective class representatives may not simply rely upon "mere repetition of the language of Rule 23(a)" to support their motion.  *Id.*  Instead, an adequate basis for *each* prerequisite must be pled and supported by the facts.  *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) (citation omitted).  Additionally, this Court must engage in a "rigorous analysis" to determine whether the prerequisites of Rule 23 are satisfied.  *American Medical Sys.*, at 1078-79, *citing General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).  The Court, however, should not attempt to resolve or assess the merits of the action in determining whether a class should be certified.  *Weathers*, at 1201.

### Two Inherent Prerequisites: Existence of a "Class" and Membership in the "Class."

Although Rule 23 does not explicitly identify this requirement, one necessary element is that "there must be a 'class.' "  Wright and Miller, §1760. This determination depends on the circumstances of each case.  If the Court is satisfied that a class exists, it must then examine whether the proposed representatives are members of the class they seek to represent.  *Id.* at §1761.

-3-

### A.    Is there a "Class?"

In *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998), *cert. denied*, 524 U.S. 923 (1998), the Sixth Circuit indicated that no class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified and that each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b).  *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000), *cert. denied*, 531 U.S. 1148 (2001).  Other Circuits have held that other inherent elements must be shown in addition to the four explicit requirements.  *See Chaffee v. Johnson*, 229 F.Supp. 445, 448 (S.D.Miss 1964), *aff'd*, 352 F.2d 514 (5th Cir. 1965), *cert. den*. 384 U.S. 956 (1966) ("The members of a class must be capable of definite identification as being either in or out of it."); *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976) (To determine whether a class action is proper, the district court must determine whether a class exists and, if so, what it includes. Although not specifically mentioned in the rule, the definition of the class is an essential prerequisite to maintaining a class action).

In their Amended Complaint, the Plaintiffs initially sought to certify a class which includes:

> pre-trial detainees, arrested without a warrant for alleged offenses in the jurisdiction of Whitley County, incarcerated in the Clay County Jail and who have experienced or will experience an excessive and unconstitutional delay between their warrantless arrest and preliminary hearing for a Judicial determination on probable cause for the arrest.

[*See* Record No. 3, First Amended Complaint, ¶ 1.]  However, in their memorandum in support of class certification, the Plaintiffs seek to define the class as:

-4-

past, present, and future warrantless arrestees[1] who have a Fourth Amendment right to a Judicial determination, of probable cause for their warrantless arrest, within 48 hours of their arrest – and who have been, or will be, denied that right.[2]

[Record No. 13, pg. 1]

Unlike the class sought to be certified in the First Amended Complaint, this broader class would include arrestees detained in both the Clay County Detention Center and the Whitley County Detention Center.  [Record No. 13, pg. 1]  This would expand the class beyond those whose violations of rights was caused by the closure of the Whitley County facility to include all persons arrested without a warrant in Whitley County since *Gerstein* or *McLaughlin*. *Gerstein v. Pugh*, 420 U.S. 103 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

Fed. R. Civ. Pro. 23(c)(1) grants the trial court broad discretion in the amendment of a class.  However, this language refers to amendment of a class which has previously been certified, usually where plaintiffs sought to expand a class based on a similar factual situation. *See, e.g. Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1147 (11th Cir. 1983); *Dong ex rel. Dong v Board of Educ.*, 197 F.3d 793 (6th Cir. 1999).  Where, as here, the Plaintiffs seek to expand their class prior to certification, the Court believes the better route would be for plaintiffs to file an Amended Complaint laying out the grounds for the expanded class of Plaintiffs.  The Amended Complaint will almost certainly spell out a factual situation far different from the First Amended Complaint's reliance on the Whitley County Detention Center's closure as the primary

---

[1]    Presumably Whitley County arrestees, since plaintiffs examined only Whitley County arrest records.

[2]    This would exclude "arrestees who were arrested pursuant to a warrant issued by a Judge, arrestees who were arrested pursuant to warrant issued through an indictment by the grand jury, arrestees who were arrested without a warrant and did not receive a probable cause hearing in compliance with *Gerstein/McLaughlin* – but were able to make bond within 48 hours and thus be released from jail in that time period."

cause of the civil rights violation. Having already filed a First Amended Complaint, plaintiff must seek permission of the Court to file a Second Amended Complaint. If, however, the Court were to allow plaintiffs to expand the class by virtue of their memorandum in support it would raise an additional concern. Specifically, Plaintiffs may no longer adequately represent that class.[3]

### B.    Are the Plaintiffs Members of the Proposed Class?

Assuming the Plaintiffs have defined a class, they must also be members of the proposed class. This element stems from the real party in interest requirement of Rule 17(a) of the Federal Rules of Civil Procedure and is closely related to subsection (a)(4) of Rule 23, requiring that the representatives adequately protect the interest of the proposed class members. F.R.C.P. 17(a); F.R.C.P. 23(a)(4); Wright and Miller, §1760. In the interest of thoroughness, the Court will address separately both the class raised in the Amended Complaint including those arrested during the closure of the Whitley County Detention Center ("jail closure class") and the broader class raised in the memorandum in support of class certification ("all arrestees class"). [Record No. 3, 13]

In the Amended Complaint, Plaintiffs assert that they were arrested without a warrant, were arrested under the jurisdiction of Whitley County, held in Clay County, and were held for more than 48 hours without judicial determination of probable cause. [Record No. 3, ¶24-26] Under the allegations contained in the First Amended Complaint, they are members of the

---

[3]    *See* discussion at section (B)(iii)

proposed class.[4]  If, however, the Court were to allow the definition of the class contained in the memorandum filed in support of certification,  while the Plaintiffs would still be members of the class, they might in fact no longer adequately represent the class.  (This issue which will be addressed below.)  Therefore, although it appears that the proposed class already suffers from at least one fatal flaw, the Court will proceed to examine application of Rule 23(a) to determine if there is any merit to the Plaintiffs' class allegations.

### C.    Rule 23(a) – Four Prerequisites of a Class Action

Rule 23(a) governs the prerequisites for certifying a class action.  Specifically, it provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

F.R.C.P.23(a).  Each of these elements will be examined in turn.

### 1.    Rule 23(a)(1) – Is Joinder Impracticable?

Subsection (a)(1) of the rule is often referred to as the numerosity requirement.  Wright & Miller, §1762.  Analysis of this requirement turns on whether joinder of all alleged class members would be impracticable.  "Impracticability" depends upon all the circumstances of the case.  *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970).   No specific minimum number of alleged class members is necessary.  Instead, the appropriate inquiry is whether plaintiffs have sufficiently demonstrated the existence of the numbers of persons they purport

---

[4]     This more limited class presents a different concern on the issue of the impracticability of joinder.

to represent. *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666 (W.D. Ky. 1974); *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989).  In making this determination the Court may consider "reasonable inferences drawn from facts before it." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976).  In reviewing this issue, the Court cannot rely on speculation or conclusory allegations of the proposed representatives.  Instead, the Plaintiffs must "show some evidence of or reasonably estimate the number of class members." *Schwartz v. Upper Deck*, 183 F.R.D. 672 (S.D.Ca. 1999); *Sims v. Parke Davis & Co.*, 334 F.Supp. 774, 781 (E.D. Mich. 1971) ("Speculation cannot be used to establish that a prospective class is so numerous as to make joinder impracticable.")

In the present case, an estimation of the size of the class depends largely on whether the class is defined as the "jail closure" class or the "all arrestee" class.  The Plaintiffs submit that the "all arrestee" class numbers at least 126 members, based on a record search of Whitley County covering approximately one year.  [Record No. 13, pg. 4-5]  Moreover, since this class would likely grow in number as more persons who were arrested without a warrant are discovered, this would satisfy the numerosity requirement.[5]  If, however, the Court were to limit the class to its definition in the First Amended Complaint, the class becomes much more finite.  As Defendants Mike Patrick and the Whitley County Fiscal Court point out, only 48 persons appear to have been arrested without warrant and held for more than 48 hours in Clay County during the period in which the Whitley County facility was closed.

---

[5]     The named Plaintiffs, however, would no longer satisfy the representative requirement, *supra.*

-8-

It appears that, on the basis of the records search performed by the Plaintiffs, they have the name, social security number, and home address of each person who might be included in the "jail closure" class.  As the number is relatively small and generally local, they have not shown why joinder of each would be impracticable.

### 2.      Rule 23(a)(2) – Common Questions of Law or Fact

Common questions of law or fact regarding the proposed class must be present before certification is proper.  F.R.C.P. 23(a)(2).  While the Court will address subsection (a)(2), and discuss the relevant allegations, the Court will not draw any conclusions concerning the resolution of any common questions beyond determining if they exist.

Although many courts have simply concluded that common questions exist without indicating the reasons for their determination, the Sixth Circuit has held this requirement "is qualitative rather than quantitative, that is, there need only be a single issue common to all members of the class." *American Medical Sys.*, 75 F.3d at 1080; 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §3.10, at 3-50 (3d ed.1992).  However, the existence of any common question is insufficient because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality.  What is necessary is a common issue the resolution of which will advance the litigation."  *Sprague*, 133 F.3d at 397.

Here, the question of whether there is common issue again depends on which definition of the class the Court considers.  If the Court were to certify the "jail closure" class, the procedures that Whitley and Clay County followed in terms of prisoner transport, detention and hearing schedules would be sufficiently similar to allow class treatment.  If, however, the Court certified the "all arrestees" class, it necessarily includes persons whose potential civil rights

-9-

violations would be in no way related to the closure of the Whitley County facility.  Plaintiffs are not alleging that KCr 3.02 is itself violative of *Gerstein* and *McLaughlin*, which would at least present a common question of law entitling each member of the "all arrestees" class to relief.  The Plaintiffs' broad challenge instead implies that Whitley County has inadequate procedures for providing probable cause hearings notwithstanding the condition of its detention facilities.  This would require the Court to engage in an individualized examination of the procedures followed regarding each inmate, a task that would be nearly impossible if it were to certify a class of 150+ arrestees.

### 3.   Rule 23(a)(3) - Are the Claims of the Named Representatives Typical of the Class?

Subsection (a)(3) requires that the claims of the representatives be typical of the claims of the class.  Fed. R. Civ. Pro. 23(a)(3); Wright & Miller, § 1764.  In conducting this analysis, the Court must determine "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."  Newberg and Conte, § 3.13, at 3-75, 76.  "The premise may be simply stated:  as goes the claims of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.  The representatives' interests must be aligned with those of the putative class and the pursuit of their claims must also advance the interest of the class. *American Medical Sys.*, 75 F.3d at 1082.

The representatives' claims need not always involve the same facts or law, provided there is a common element of fact or law. *Senter*, 532 F.2d at 525.  However, limitations do exist, "particularly when the claimed injury is tied to a complex course of conduct engaged in by the

defendants over a long period of time, as opposed to a single act to which all class members have been exposed equally." *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 492 (S.D.Ill. 1999), *quoting Insolia v. Phillip Morris Inc.*, 186 F.R.D. 535, 543-44 (W.D.Wis. 1998).

In *Stout*, 228 F.3d 709, the Sixth Circuit examined the typicality element involving numerous claims of fraudulent conduct against a used car dealership. The plaintiffs relied on their understanding of the purchase and transaction terms. However, because not all buyers purchased cars under the same agreement, the Court identified discrepancies between the plaintiffs and the putative members. The discrepancies included:

> the type of car, the degree of repairs necessitated, the response to those repairs, the purpose for which the car was purchased, the individual circumstances and transactions surrounding each purchase including each class member's understanding of the terms and condition of their purchase agreements, and the extent of the injury suffered.

*Id.* at 717. As a result of the complex course of conduct engaged in by the defendants over a long period of time, the court upheld the district court's determination that the plaintiffs' claims were not typical of class.

In the present action, if the Court were to certify the "jail closure" class, the Plaintiffs have alleged they were arrested without a warrant, under the jurisdiction of Whitley County, held in Clay County, and held for more than 48 hours without judicial determination of probable cause. [Record No. 3, ¶24-26] Under the allegations contained in the First Amended Complaint, they would be representative of the proposed class. The violation of civil rights which the named plaintiffs allegedly suffered as a result of the Whitley County closure would be nearly identical to those suffered by the other potential class members of the "jail closure" class.

-11-

If, however, the Court were to allow the definition of the class in the memorandum in support of certification, while the Plaintiffs would still be members of the class, they would no longer adequately represent the class as a whole. Based on the evidence submitted to the Court, the "all arrestees" class contains a number of persons who were arrested both before and after the closure of the Whitley County Detention Center. [Record No. 13, Ex. 1] If these individuals had their civil rights violated by any of the Defendants, it must have been on some basis other than the closing of the Whitley County facility and subsequent detention in Clay County. Their factual basis would be substantially different from the named Plaintiffs.

The challenge by these other potential class members to their allegedly illegal detention would be substantially different from that of other Plaintiffs in the class. Moreover, for those persons allegedly held for more than 48 hours who were arrested either before or after the closure of the Whitley County Detention Center, the question of whether the closure represents an emergency under *McLaughlin* is irrelevant. It is, however, potentially of primary importance to the subset of "jail closure" plaintiffs who trace their violation of rights to the facility's closure. A determination that the closure of the Whitley County facility represented an emergency situation which excused compliance with the 48 hour requirement of *McLaughlin* would largely destroy the claims of named Plaintiffs while leaving untouched those of the "all arrestees" class who were not detained in Clay County. Therefore, the named Plaintiffs, themselves members of the "jail closure" subset of the "all arrestees" class, are not sufficiently representative of the class as a whole.

-12-

**4.      Rule 23(a)(4) – Will the Named Plaintiffs   Fairly and Adequately Protect the Interests of the Class?**

Subsection (a)(4) permits a class to be maintained only if "the representative parties will fairly and adequately protect the interests of the class."  The Sixth Circuit has adopted a two-part analysis for this requirement.  *Senter*, 75 F.3d at 524-25, *citing Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973).  This test requires that the representatives: (1) have common interests with unnamed members of the class and (2) will vigorously prosecute the interests of the class though qualified counsel.  *Senter*, at 524-35; *see also Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026 (6th Cir. 1977) (The rule tests "whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent" and "the experience of the counsel for the plaintiffs.")  Additionally, the second element requires that attorneys for the class must be qualified to conduct the proposed litigation." *Senter*, at 1083.  These determinations are questions of fact and are dependent upon the circumstances of each case.  Further, the party seeking certification has the burden of proof on these issues.  *See* Wright and Miller, § 1765.

The first part of this requirement (*i.e.*, that the named plaintiffs have common interests with other unnamed plaintiffs) has been addressed in the previous section of this memorandum opinion.  And while the Court would normally engage in a thorough and exhaustive analysis of the second element, having already concluded that plaintiffs do not qualify for class certification, the Court need not parse whether representations of prior criminal experience and involvement in a single state class action are sufficient to qualify.

-13-

### III.   CONCLUSION

The Plaintiffs have failed to meet their burden of establishing the inherent elements and the subsection (a) prerequisites of a class action under Rule 23 of the Federal Rules of Civil Procedure.  Given this failure, it is unnecessary to engage in an analysis under Rule 23(b). Accordingly, it is hereby

**ORDERED** as follows:

1.      The Plaintiffs' Motion for Class Certification is **DENIED**.  [Record No. 2]

2.      Defendants' Motion to Dismiss is **DENIED,** without prejudice, as premature. [Record No. 15]

This 9th day of March, 2006.



Signed By:

**_Danny C. Reeves_** DCR

**United States District Judge**